IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LYNNETTE KIRKPATRICK,

        Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

No. CV 08-6167-MO

OPINION AND ORDER

**MOSMAN, J.,**

Plaintiff Lynnette Kirkpatrick seeks judicial review of the final decision of the Commissioner of the Social Security Administration finding her not disabled and denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Following thorough and careful review of the record, the court AFFIRMS the final decision of the Commissioner.

## BACKGROUND

I.    **Administrative History**

Ms. Kirkpatrick previously filed concurrent Title II and Title XVI applications for disability on August 6, 2001. Her applications were denied at the initial and reconsideration levels and again by an Administrative Law Judge ("ALJ") on April 25, 2003. Both the Appeals Council and the U.S. District Court affirmed the denial of benefits. Ms. Kirkpatrick filed a

PAGE 1 - OPINION AND ORDER

second Title II application on October 18, 2004, but it was dismissed pursuant to res judicata.

The ALJ also found that there was no basis under which to consider reopening Ms. Kirkpatrick's

prior Title XVI application under *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988). (A.R. 12.)[1]

Thus, only the Title XVI application is being considered today.

Ms. Kirkpatrick filed her current application for SSI on October 4 or 18, 2004. (A.R. 12,

52, 66-68.) She alleges disability since October 4, 2004, due to depression, anxiety, and

degenerative disc disease exacerbated by a fall in November 2006. (A.R. 52, 341; Pl.'s Br. (#12)

1.) The application was denied initially and on reconsideration. (A.R. 33, 29.) An ALJ held a

hearing on January 30, 2007, which was continued to September 19, 2007. (A.R. 324-26, 328.)

At the hearing, Ms. Kirkpatrick was represented by an attorney. (A.R. 330.) Ms. Kirkpatrick and

vocational expert ("VE") Vernon G. Arne testified at the hearing. (A.R. 332.)

The ALJ issued a decision on November 30, 2007, in which she found that Ms.

Kirkpatrick was not entitled to receive benefits. (A.R. 23.) That decision became the final

decision of the Commissioner on April 10, 2008, when the Appeals Council denied Ms.

Kirkpatrick's request for review. (A.R. 5.) This appeal followed.

## II.    Ms. Kirkpatrick's History

At the time of the hearing, Ms. Kirkpatrick was a forty-year-old woman living with her

fifteen-year-old disabled daughter. (A.R. 334-35.) She left school during the tenth grade, but

obtained her GED at age twenty-five. (A.R. 262.) Ms. Kirkpatrick helped run her ex-husband's

---

[1] Citations "A.R." refer to indicated pages in the official transcript of the administrative record filed on September 9, 2008 (#11).

PAGE 2 - OPINION AND ORDER

chimney cleaning business for approximately seven years, has worked as a gas-station attendant, a waitress, and a quality control worker, and ran a day care for a short time.  (A.R. 263, 366, 71.)

**DISCUSSION**

**I.    <u>Standards</u>**

The initial burden of proof rests on a claimant to establish disability.  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995).  The claimant must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Commissioner must conduct a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520.  Each step is potentially dispositive.  At step one, the claimant is not disabled if the Commissioner finds he is engaged in substantial gainful activity.  *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(a)(4)(i).  At step two, the claimant is not disabled if he has no "medically severe impairment or combination of impairments."  *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(a)(4)(ii).  At step three, the claimant is disabled if his impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity."  *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(a)(4)(iii).

If the inquiry proceeds to step four, the Commissioner must assess the claimant's residual functional capacity ("RFC"), which is an assessment of the sustained, work-related activities the claimant can do on a regular and continuing basis.  20 C.F.R. § 404.1545(a); *see also* Social

Security Ruling ("SSR") 96-8p.  At step four, the claimant is not disabled if the Commissioner

finds he retains the RFC to perform his past work.  *Yuckert*, 482 U.S. at 142; 20 C.F.R. §

404.1520(a)(4)(iv).  At step five, the Commissioner must determine whether the claimant is able

to do any other work that exists in the national economy.  *Yuckert*, 482 U.S. at 142; 20 C.F.R. §

404.1520(a)(4)(v).  Here the burden shifts to the Commissioner to show that a significant number

of jobs exist in the national economy that the claimant can do.  *See Yuckert*, 482 U.S. at 141-42;

*see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the Commissioner meets this

burden, the claimant is not disabled.  *Tackett*, 180 F.3d at 1098-99.

A district court must affirm the Commissioner's decision if it is based on proper legal

standards and the findings are supported by substantial evidence in the record as a whole.

42 U.S.C. § 405(g); *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Rollins v.*

*Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).  "Substantial evidence means more than a mere

scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.

1995).  If the "evidence is susceptible to more than one rational interpretation," one of which

supports the Commissioner's final decision, the district court must uphold the Commissioner's

decision.  *Andrews*, 53 F.3d at 1039-40; *Batson*, 359 F.3d at 1193; *Thomas v. Barnhart*, 278 F.3d

947, 954 (9th Cir. 2002).

## II.    The ALJ's Decision

The ALJ found that Ms. Kirkpatrick has not engaged in substantial gainful activity at any

time relevant to this decision.  (A.R. 14-15.)  She found that Ms. Kirkpatrick has the following

severe impairments: depression, anxiety disorder, and degenerative disc disease of the lumbar

spine. (A.R. 15.) The ALJ found that these impairments did not meet or equal a disorder listed

in the Commissioner's regulations, and assessed Ms. Kirkpatrick's RFC:

> [T]he claimant has the residual functional capacity to perform light work activity that
> allows her to change position for a few minutes at a time, every hour. Light work
> generally involves frequently lifting 10 pounds and occasionally lifting up to 20
> pounds; standing/walking for six hours out of an eight-hour workday; and sitting for
> two hours out of an eight-hour workday. She is precluded from performing complex
> tasks or following detailed instructions. The claimant should not have frequent
> contact with the general public or close interaction with co-workers. She should have
> only infrequent adjustments or changes in the workplace.

(A.R. 19-20.) The ALJ applied these findings to her analysis.

The ALJ found that Ms. Kirkpatrick could no longer perform her past relevant work at

step four. (A.R. 21.) At step five, the ALJ found that Ms. Kirkpatrick could perform jobs that

exist in significant numbers in the national economy. (A.R. 21-22.) Therefore, the ALJ found

Ms. Kirkpatrick "not disabled" and ineligible for SSI benefits. (A.R. 22-23.)

Ms. Kirkpatrick disputes the ALJ's step five finding that there are jobs in the economy

that she can perform. (Pl.'s Br. (#12) 1-2.) Specifically, she contends that the ALJ failed to give

clear and convincing reasons for rejecting her own testimony (*id.* at 15-17), as well as that of

examining psychologist Dr. Prescott (*id.* at 17-18), and failed to supply reasons supported by

substantial evidence for rejecting plaintiff's therapist, Ms. Snyder's, lay evidence (*id.* at 18-19).

## III.    Ms. Kirkpatrick's Testimony

Ms. Kirkpatrick argues that the ALJ failed to give clear and convincing reasons for

rejecting her testimony regarding her level of pain and impairment. (Pl.'s Br. (#12) 15-17.)

"Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597,

604 (9th Cir. 1989). In deciding whether to accept a claimant's subjective symptom testimony,

"an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the

credibility of the claimant's testimony regarding the severity of her symptoms." *Smolen v.*

*Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996) (footnote omitted).

> Under the *Cotton* test, a claimant who alleges disability based on subjective
> symptoms "must produce objective medical evidence of an underlying impairment
> 'which could reasonably be expected to produce the pain or other symptoms alleged
> . . . .'" *Bunnell v. Sullivan,* 947 F.2d [341,] 344 [(9th Cir. 1991) (en banc)] (quoting
> 42 U.S.C. § 423(d)(5)(A) (1988)); *Cotton* [*v. Bowen,*] 799 F.2d [1403,] 1407-08 [(9th
> Cir. 1986)]). The *Cotton* test imposes only two requirements on the claimant: (l) she
> must produce objective medical evidence of an impairment or impairments; and (2)
> she must show that the impairment or combination of impairments *could reasonably*
> *be expected to* (not that it did in fact) produce some degree of symptom.

*Smolen*, 80 F.3d at 1281-82.

Once the *Cotton* test is met, the ALJ must assess the claimant's credibility. The ALJ must

provide clear and convincing reasons for discrediting a claimant's testimony regarding the

severity of his symptoms. *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993); *see also Smolen*,

80 F.3d at 1283. The ALJ must make findings that are "sufficiently specific to permit the

reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."

*Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). But, if an ALJ notes at least "arguably

germane reasons for dismissing" testimony, "even if he did not clearly link his determination to

those reasons" the ALJ's decision is supported by substantial evidence. *Lewis v. Apfel*, 236 F.3d

503, 512 (9th Cir. 2001).

The ALJ may consider objective medical evidence and the claimant's treatment history as

well as the claimant's unexplained failure to seek treatment or to follow a prescribed course of

treatment. *Smolen*, 80 F.3d at 1284. "While subjective pain testimony cannot be rejected on the

sole ground that it is not fully corroborated by objective medical evidence, the medical evidence

is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)). The ALJ may also consider the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge about the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. In addition, the ALJ may employ ordinary techniques of credibility evaluation such as prior inconsistent statements concerning symptoms and statements by the claimant that appear to be less than candid. *Id.*; *see also* SSR 96-7p. When the ALJ rejects claimant's subjective statements, he must provide "specific, clear and convincing reasons." *Smolen*, 80 F.3d at 1281.

Ms. Kirkpatrick met the requirements of the *Cotton* test when she produced objective medical evidence of her degenerative disc disease, which the ALJ acknowledged was severe at step two. However, the ALJ properly discredited her subjective pain testimony, noting "the claimant's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely credible." (A.R. 20.) The ALJ stated that although Ms. Kirkpatrick occasionally told her counselor that she was barely functioning, her significant activities and achievements caused the counselor to point out the discrepancy in her assertions. (A.R. 16, 20.) She further commented that Ms. Kirkpatrick's complaints often did not match her medical records or her activities. For example, Ms. Kirkpatrick told Dr. Prescott that "she had had panic attacks 'for years' and she took Xanax every day, but this claim cannot be substantiated." (A.R. 16.) And Ms. Kirkpatrick stated that she drove, ran errands and shopped for groceries; she sometimes indicated that she had no friends or interests but at other times stated she had several friends, a

good relationship with her boyfriend, and was making plans to earn extra income and keeping busy. (A.R. 16-17.)

The ALJ found that Ms. Kirkpatrick was misleading when she told Dr. Prescott that she had an ongoing eating problem, noting that although she had a significant problem in 2005 when her mother was dying, by the time she met with Dr. Prescott in 2007 her weight was stable. (A.R. 17.) She also gave inconsistent information to her therapist and Dr. Miller, telling Dr. Miller that nothing was helping her pain and twelve days later telling her therapist that her pain and functioning were significantly improved. (A.R. 17.) The ALJ expressed doubt regarding Ms. Kirkpatrick's problem with blackouts, indicating surprise that doctors allowed her to drive when she indicated that she passed out several times a week due to low blood pressure, and also noting that all blood pressure readings in the record were normal. (A.R. 18.)

Finally, the ALJ stated that Ms. Kirkpatrick's most recent medical records indicated that her back problems were not as severe as her subjective pain complaints would indicate. The electrodiagnostic study indicated that Ms. Kirkpatrick does have trigger points in the paraspinal muscles and would benefit from physical therapy. (A.R. 19.) However, she does not suffer from "denervating neuropathy or radiculopathy affecting the left lower extremity or left paraspinals, and the nerve conduction studies were normal." (A.R. 18.)

The inconsistencies in Ms. Kirkpatrick's testimony, and the divergence between her testimony and the results of the electrodiagnostic study, are clear and convincing reasons to reject Ms. Kirkpatrick's subjective pain testimony.

//

//

PAGE 8 - OPINION AND ORDER

IV.    **Dr. Prescott's Testimony**

Ms. Kirkpatrick contends that the ALJ failed to give clear and convincing reasons for rejecting the opinion of Dr. Prescott, an examining psychologist.  (Pl.'s Br. (#12) 17.)

The ALJ is responsible for resolving conflicts in the medical evidence.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The opinion of a treating physician is accorded the most weight, while the opinion of an examining physician is entitled to greater weight than that of a nonexamining physician.  *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995).  "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician."  *Id.* (quoting *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)).  Even a well supported opinion does not control if it is inconsistent "with the other substantial evidence in the case record."  SSR 96-2p.

Ms. Kirkpatrick argues that Dr. Prescott's determination that Ms. Kirkpatrick has marked restrictions in interactions with supervisors must be credited as true because the ALJ failed to provide clear and convincing reasons for rejecting the opinion.  (Pl.'s Br. (#12) 18.)  She further contends that the opinion precludes competitive employment, thus, Ms. Kirkpatrick must be found disabled.  (Pl.'s Br. (#12) 18.)  As support, she points to the VE, who testified that "there is an expectation that the [worker] would respond to feedback from the supervisor" (A.R. 376) and that if a worker could not interact appropriately with supervisors it would preclude competitive employment (A.R. 374).

The administrative record demonstrates that the ALJ did not in fact reject Dr. Prescott's opinion.  It is true that the ALJ's opinion did not include the fact that Dr. Prescott, when asked on a form about restrictions in interactions with supervisors, checked the "marked" box.  In fact, the

ALJ did not discuss any aspect of this form in detail.  However, the transcript of the hearing makes clear that the ALJ knew that Dr. Prescott had checked "marked" and took that into account in drafting an RFC for Ms. Kirkpatrick.  (A.R. 374-78.)

The ALJ noted that "marked" is defined differently on this form than in the B Criteria used by the Commissioner and does not completely preclude an activity as it does with the B Criteria.  (A.R. 375.)  On Dr. Prescott's form "marked" is defined as follows: "There is serious limitation in this area.  The ability to function is severely limited but not precluded."  (A.R. 267.)  The ALJ indicated that she interpreted this literally; that it is limited but not precluded.  (A.R. 378.)  She then made clear that she had included "a set routine" and "no close supervision" in her hypothetical to the VE because of Dr. Prescott's opinion.  (A.R. 376-79, 365.)  The VE confirmed that he had taken those factors into account when he had indicated jobs that Ms. Kirkpatrick could perform.  (A.R. 376, 379.)  There was no error here; the ALJ did not reject Dr. Prescott's opinion and was therefore not required to give clear and convincing reasons for a rejection that did not occur.

**V.    <u>Sally Snyder's Testimony</u>**

Ms. Kirkpatrick contends that the ALJ improperly limited the weight of the lay testimony provided by Ms. Kirkpatrick's therapist, Ms. Snyder.  (Pl's. Br. (#12) 19.)  The parties agree that Ms. Snyder is a lay witness, rather than a medical source, because she has a master's in social work ("MSW"), rather than a medical degree or doctorate.  (Pl.'s Br. (#12) 19 (citing 20 C.F.R. § 404.1513(a) (defining acceptable medical sources)).)

The ALJ has a duty to consider lay witness testimony.  *Lewis*, 236 F.3d at 511; 20 C.F.R. §§ 416.913(d)(4); 416.945(a)(3).  The value of lay witness testimony lies in their eyewitness

observations, which may "often tell whether someone is suffering or merely malingering."

*Dodrill*, 12 F.3d at 918.  The ALJ may not reject such testimony without comment, but may

reject lay testimony inconsistent with medical evidence.  *Lewis*, 236 F.3d at 511.  If an ALJ

rejects lay witness testimony entirely, she must give reasons germane to the witness.  *Nguyen v.*

*Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

The reviewing court may affirm an ALJ's erroneous rejection of lay testimony if "the

mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability

conclusion."  *Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006).  Alternatively, the reviewing

court may credit lay testimony if the record shows that crediting such testimony would establish

workplace limitations resulting in disability.  *Schneider v. Comm'r*, 223 F.3d 968, 976 (9th Cir.

2000).

Ms. Snyder stated, in a letter to Ms. Kirkpatrick's attorney, that she believed it was

unlikely that Ms. Kirkpatrick could "function sufficiently well, on a consistent basis, to sustain

full-time employment, both in terms of getting to work most every day and of being able to meet

basic employment expectations."  (A.R. 260.)  Ms. Kirkpatrick does not contend that the ALJ

improperly rejected any other portion of Ms. Snyder's testimony; she points only to the opinion

regarding Ms. Kirkpatrick's overall ability to work.  (Pl.'s Br. (#12) 18-19.)  However, the ALJ

noted that Ms. Snyder prefaced this statement with the acknowledgment that she has neither "the

information [n]or the expertise to formulate and offer an opinion about Ms. Kirkpatrick's ability

to function in any particular type of work setting or situation."  (A.R. 21, 260.)  This alone is a

germane and specific reason to reject Ms. Snyder's opinion.

PAGE 11 - OPINION AND ORDER

Furthermore, as the ALJ notes, a finding of disability as it relates to Social Security is reserved to the Commissioner. *See* SSR 96-5p (an opinion on an ultimate ability to work, "even when offered by a treating source . . . can never be entitled to controlling weight or given special significance"). Thus, the ALJ did not err in rejecting Ms. Snyder's conclusion that Ms. Kirkpatrick was unable to work, and thus was disabled.

**VI.    Step Five Findings**

Finally, Ms. Kirkpatrick contends that the ALJ's step five finding failed to address the limitations above. (Pl.'s Br. (#12) 20.) The ALJ's questions to a vocational expert, and subsequent findings at step five in the sequential proceedings, need not include unsupported limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). Because the ALJ committed no reversible error, Ms. Kirkpatrick's assertion regarding omitted limitations is rejected.

CONCLUSION

The Commissioner's decision that Ms. Kirkpatrick did not suffer from disability and is not entitled to benefits under Title XVI of the Social Security Act is based upon correct legal standards and supported by substantial evidence. The Commissioner's decision is AFFIRMED and the case is dismissed.

IT IS SO ORDERED.

Dated this  1st  day of April, 2009.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge

PAGE 12 - OPINION AND ORDER